ROBERT F. RUYAK *(Pro Hac Vice)*
robertr@ruyakcherian.com
**RUYAKCHERIAN LLP**
1901 L Street NW, Suite 700
Washington, DC  20036
Telephone:  202-838-1560

Attorneys for Defendants
PERFECTUS ALUMINIUM INC.,
aka "Perfectus Aluminum Inc.," and
PERFECTUS ALUMINUM ACQUISITIONS LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-cr-00282 RGK |
| Plaintiff, | |
| vs. | Judge:  R. Gary Klausner |
| ZHONGTIAN LIU,<br>    aka "Liu Zhongtian,"<br>    aka "Chairman,"<br>    aka "Uncle Liu,"<br>    aka "UL,"<br>    aka "Big Boss,"<br>CHINA ZHONGWANG HOLDINGS<br>LIMITED,<br>    aka "ZW,"<br>    aka "Mother Ship,"<br>ZHAOHUA CHEN,<br>    aka "Chen Zhaohua,"<br>    aka "Uncle Chen,"<br>XIANG CHUN SHAO,<br>    aka "Johnson Shao,"<br>PERFECTUS ALUMINIUM, INC.,<br>    aka Perfectus Aluminum Inc.,"<br>PERFECTUS ALUMINUM<br>ACQUISITIONS, LLC,<br>SCUDERIA DEVELOPMENT, LLC,<br>1001 DOUBLEDAY, LLC,<br>VON KARMAN - MAIN STREET,<br>LLC, and<br>10681 PRODUCTION AVENUE, LLC, | **PERFECTUS DEFENDANTS'<br>SENTENCING MEMORANDUM;<br>OBJECTIONS TO<br>PRESENTENCE REPORT; AND<br>SENTENCING SUMMARY<br>CHART**<br><br>Sentencing Date:     April 11, 2022<br>Time:    1:30 p.m. |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     THERE IS NO STATUTORY AUTHORITY TO ORDER THE
        PERFECTUS DEFENDANTS TO PAY RESTITUTION ............................ 2

        A.    The MVRA is Inapplicable to Count One ............................................ 4

        B.    The MVRA Does Not Authorize Restitution for Passing False Papers
              Through a Customshouse in Violation of 18 U.S.C. § 545 ................... 6

              1.    The CBP Does Not Have a Property Interest in the Unpaid
                    AD/CVD Duties ........................................................................... 7

              2.    Probation Overstates Any Loss to the CBP ............................... 11

        C.    The Convictions in Counts Two through Ten of Wire Fraud Do Not
              Support Probation's Recommended Restitution Award ...................... 12

              1.    The 28 Institutional Investors Are Not "Victims" Under the
                    MVRA ....................................................................................... 13

              2.    There is Insufficient Evidence that the Perfectus Defendants
                    Caused a Loss ........................................................................... 15

              3.    Probation's Mathematical Calculation of the Restitution Is
                    Significantly and Irreparably Flawed ........................................ 18

III.    ADDITIONAL OBJECTIONS TO THE PSRS ........................................... 20

IV.     CONCLUSION ........................................................................................... 22

**Cases**

*Cleveland v. United States*, 531 U.S. 12 (2000) ........................................................ 8

*Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258 (2014) ......................... 13

*In re Bofl Holding, Inc. Securities Litigation*, 977 F.3d 781 (9th Cir. 2020) ..... 13, 16, 17, 19

*In re Daou Sys., Inc.*, 411 F.3d 1006 (9th Cir. 2005) ............................................. 17

*Kelly v. United States*, 140 S. Ct. 1565 (2020) ..................................................... 8, 9

*Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021) ..................................................... 11

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111 (9th Cir. 2013) ................................................................................................ 17

*Paroline v. United States*, 572 U.S. 434 (2014) ................................................... 2, 17

*Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341 (Ct. Int'l Trade 2019) ....................................................................................................................... 10

*Perfectus Aluminum, Inc. v. United States*, 836 Fed. Appx. 883 (Fed. Cir. 2020) ... 10

*Robers v. United States*, 572 U.S. 639 (2014) .......................................................... 7

*SKF USA Inc. v. United States*, 28 C.I.T. 170 (2004) ............................................. 10

*U.S. v. Ferguson*, 584 F.Supp.2d 447 (D. Conn. 2008) ......................................... 15

*United States v. Brock-Davis*, 504 F.3d 991 (9th Cir. 2007) ................................... 3

*United States v. Butler*, 694 F.3d 1177 (10th Cir. 2012) ......................................... 5

*United States v. Catoggio*, 326 F.3d 323 (2d Cir. 2003) ......................................... 14

*United States v. Collins*, 854 F.3d 1324 (11th Cir. 2017) ......................................... 8

*United States v. Conley*, 349 F.3d 837 (5th Cir. 2003) ............................................. 5

*United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917 (9th Cir. 2001) ............... 12

*United States v. Garcia-Sanchez*, 189 F.3d 1143 (9th Cir. 1999) ............................. 3

*United States v. Gossi*, 608 F.3d 574 (9th Cir. 2010) ............................................... 2

ii

*United States v. Hunter*, 618 F.3d 1062 (9th Cir. 2010) ...............................................3

*United States v. Lillard*, 935 F.3d 827 (9th Cir. 2019).................................................5

*United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139 (9th Cir. 2011) ..............................................................................................................................11

*United States v. Lo*, 839 F.3d 777 (9th Cir. 2016).......................................................2

*United States v. Luis*, 765 F.3d 1061 (9th Cir. 2014)..............................................3, 7

*United States v. Marks*, 530 F.3d 799 (9th Cir. 2008).................................................2

*United States v. Nelson*, 454 Fed. Appx. 574 (9th Cir. 2011).....................................7

*United States v. Peterson*, 538 F.3d 1064 (9th Cir. 2008) ..........................................3

*United States v. Quicksey*, 525 F.2d 337 (4th Cir. 1975) ............................................5

*United States v. Razzouk*, 984 F.3d 181 (2d Cir. 2020)...............................................8

*United States v. Stratos*, 2017 WL 272213 (E.D. Cal. Jan. 20, 2017) ......................18

*United States v. Vera*, 770 F.3d 1232 (9th Cir. 2014).................................................5

*United States v. Waknine*, 543 F.3d 546 (9th Cir. 2008).............................................3

*United States v. Ward*, 2013 WL 57855 (N.D. Cal. Jan. 3, 2013) ......................18, 19

*United States v. Zillgitt*, 286 F.3d 128 (2d Cir. 2002).................................................5

*Zenith Radio Corp. v. United States*, 710 F.2d 806 (Fed. Cir. 1983)........................10

**Statutes and Other Authorities**

18 U.S.C. § 3663A.........................................................................................................3
18 U.S.C. § 545.............................................................................................................11
19 U.S.C. § 1500...........................................................................................................10
19 U.S.C. § 1501...........................................................................................................10
19 U.S.C. § 1514(a).......................................................................................................10
S. REP. 104-179, 20 (1996)...........................................................................................5

## I.    **INTRODUCTION**

Defendants Perfectus Aluminum, Inc ("PAI") and Perfectus Aluminum Acquisitions, LLC ("PAA"), (collectively, the "Perfectus Defendants" or "Defendants") object to the imposition of the restitution order recommended in paragraphs 53 through 56 and Footnote 5 of the Presentence Investigation Reports ("PSRs") in this case.

It appears that Probation, in an effort to arrive at the largest restitution award possible, relied on the conspiracy convictions—Count One—to pull in claimed losses beyond the specific transactions charged in the substantive offenses. Probation's recommendation must be rejected as it runs afoul of the statutory framework of the Mandatory Victim Restitution Act ("MVRA"). The law is clear that a conspiracy conviction is, on its own, insufficient to justify a restitution award under the MVRA. Courts must, instead, look to the underlying object of the conspiracy to determine whether the MVRA applies. Here, the underlying substantive convictions do not support Probation's recommendation that, combined, the U.S. Customs and Border Protection ("CBP") and certain financial institutions receive a restitution award in excess of $1.9 billion.

First, the customs fraud counts—Counts Eleven through Seventeen—do not support the imposition of a $1.8B restitution order based on the unpaid AD/CVD duties at issue in this matter. Not only does Probation fail to provide any legal authority that the Perfectus Defendants committed an offense against property. Accordingly, there is no basis to order that the Perfectus Defendants pay restitution to the United States Customs and Border Protection ("CBP") for the unpaid AD/CVD duties.

The Perfectus Defendants also object to the imposition of restitution relating to the purported investments made in China Zhongwang Holdings Limited ("CZW"). As a threshold matter, the 28 institutional investors identified by the

government are not "victims," as none of them were or are beneficial owners of any shares. Furthermore, there is simply insufficient evidence that the offense conduct caused the identified 28 "institutional investors" in CZW to have lost anything, and there is otherwise no factual basis for a collective loss $124,270,000. In fact, as explained below, this purported "estimated loss" amount defies any rational mathematical calculation.

Accordingly, because the MVRA does not apply to the substantive convictions for customs fraud and for wire fraud, there is no basis for Probation to rely on the conspiracy convictions to support its restitution recommendation.

## II.   <u>THERE IS NO STATUTORY AUTHORITY TO ORDER THE PERFECTUS DEFENDANTS TO PAY RESTITUTION</u>

"Federal courts have no inherent power to award restitution, but may do so only pursuant to statutory authority." *United States v. Gossi*, 608 F.3d 574, 577 (9th Cir. 2010); *see also Paroline v. United States*, 572 U.S. 434, 462 (2014) (holding "[r]estitution orders should represent "an application of law," not "a decisionmaker's caprice"). A district court has no discretion to order restitution outside "the bounds of the statutory framework" of the applicable restitution statute. *See United States v. Marks*, 530 F.3d 799, 811 (9th Cir. 2008) ("[a] restitution order is reviewed for an abuse of discretion, provided that it is within the bounds of the statutory framework"); *United States v. Lo*, 839 F.3d 777, 785 (9th Cir. 2016) (defining an "illegal sentence" as "one not authorized by the judgment of conviction or in excess of the permissible statutory penalty for the crime.").

The MVRA requires a "defendant convicted of an offense described in [18 U.S.C. § 3663A(c)]" to make restitution to an "identifiable victim" of the offense who "suffered … pecuniary loss." *United States v. Luis*, 765 F.3d 1061, 1065 (9th Cir. 2014) (citing 18 U.S.C. § 3663A(a)(1), (c)(1)). Confined to the "bounds of the statutory framework" of the MVRA, the Court is authorized to order restitution only

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

if the government proves by a preponderance of the evidence that: (i) the Perfectus Defendants were convicted of an offense that falls within the meaning of 18 U.S.C. § 3663A(c); (ii) the CBP and the 28 institutional investors are "identifiable victims" of the offense of conviction as the term is defined in 18 U.S.C. § 3663A(2); and, if both of these requirements are satisfied, (iii) that the "actual losses" the CBP and institutional investors suffered were a direct and proximate cause of the conduct done by each particular Defendant for which the Defendants were convicted. *See United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010) (holding the amount of restitution is limited to the victim's "actual losses" that are a direct and proximate result of the defendant's offense); *United States v. Peterson*, 538 F.3d 1064, 1074–75 (9th Cir. 2008) (stating the government has the burden of establishing that the victim's damages were caused by the conduct of which the defendant was convicted).

To satisfy its burden, the government is required to submit evidence that has "sufficient indicia of reliability to support its probable accuracy." *United States v. Garcia-Sanchez*, 189 F.3d 1143, 1148-49 (9th Cir. 1999); *see also United States v. Brock-Davis*, 504 F.3d 991, 1002 (9th Cir. 2007) ("[T]he government must provide the district court with more than just…general invoices…ostensibly identifying the amount of their losses."); *United States v. Waknine*, 543 F.3d 546, 557 (9th Cir. 2008) (district court erred by calculating actual loss for restitution purposes "by relying exclusively on the one-page loss summaries provided by the victims and in not requiring more detailed explanations of the losses each victim suffered," when there was no documentation to support the victims' claims, and the victims' affidavits were "too summary and too conclusory to be sufficiently reliable in the face of [the defense]'s objections.").

Without any analysis or discussion, Probation recommends restitution under the MVRA, seemingly predicated on the Perfectus Defendants' conspiracy

convictions—Count 1 of the Indictment. (PSR, ¶ 43-56.)  In describing the offense conduct, Probation refers to "the overall conspiracy" and asserts that "[t]he defendants conspired to evade and evade $1,836,244,745.03 in customs duties." (*Id.*, ¶¶ 54, 55.)  However, for a number of reasons, it is improper for Probation to rely on the conspiracy conviction to determine the restitution award.

### A.    The MVRA is Inapplicable to Count One

Conspiracy, in and of itself, is not an independent basis to award restitution under the MVRA. Instead, the Court must look to the underlying objects of the conspiracy to determine whether the conduct of the conviction falls within the requirements of the MVRA. In this case, the Government's strategic decision to charge a multiple objects conspiracy in Count One significantly impacts the restitution applicability analysis. The charged objects of Count One include: (i) a conspiracy to defraud the United States by obstructing the lawful functions of U.S. Customs and Border Protection by deceitful and dishonest means; (ii) a conspiracy to commit wire fraud; (iii) a conspiracy to commit the passing of false papers through a customhouse of the United States; and (iv) a conspiracy to commit international promotional money laundering. (Indictment, ¶ 32.)  As a threshold issue, because the government objected to, and the court refused to adopt, the Perfectus Defendants' requested jury instructions and special verdict form, it is impossible to determine upon which of the four objects of the conspiracy the jury unanimously agreed.

The statutory language in the MVRA requires that restitution be tied to a conviction of an "offense described in subsection (c)" of 18 U.S.C. § 3663A. Consistent therewith, for a restitution order based on an offense of conspiracy in violation of 18 U.S.C. § 371 when "the underlying object of the conspiracy" is an offense that falls under 18 U.S.C. § 3663A(c). *United States v. Butler*, 694 F.3d 1177, 1183 (10th Cir. 2012) (emphasis added). In this case, the absence of a special

verdict form, or special interrogatories, prevents the Court from concluding that the underlying object of Count One is within the statutory bounds of the MVRA. In fact, , when the offense of conviction is uncertain, courts must assume that the jury convicted the defendant of the offense that carries the lowest sentence.[1]  In *United States v. Vera*, the Ninth Circuit held that where "a defendant was convicted of a conspiracy charge alleging multiple objects of the conspiracy, at least one of which increased the statutory sentencing range," but "the jury did not specify which object supported the conviction," the appropriate remedy is to either: (i) allow the government to choose between affirming the convictions and sentence "the defendants *based on the conspiratorial object with the lowest statutory sentencing range*;" or (ii) vacate the conspiracy convictions and remand for retrial with a special jury verdict. *United States v. Vera*, 770 F.3d 1232, 1252 (9th Cir. 2014). Other circuits are in accord. *See, e.g., United States v. Conley*, 349 F.3d 837, 840 (5th Cir. 2003); *United States v. Quicksey*, 525 F.2d 337, 341 (4th Cir. 1975) ("in the absence of a special verdict, it is not possible to ascertain whether the jury intended to find the defendants guilty of conspiracy to violate the Travel Act or the Drug Act, or both Acts."); *United States v. Zillgitt*, 286 F.3d 128, 136, n. 7 (2d Cir. 2002) (noting the majority of circuits have adopted this remedy in the absence of a special verdict from the jury as to the object of the conspiracy where multiple objects were alleged).  Thus, even if the Court finds a basis to award restitution, it must base the sentence of the object that carries the lowest sentence.

With respect to Count One, the Court instructed the jury that it "must find that there was a plan to commit at least one of the crimes alleged in the indictment,

---

[1] "[R]estitution is part of a defendant's punishment under the MVRA."  *United States v. Lillard*, 935 F.3d 827, 835 (9th Cir. 2019) (citing S. REP. 104-179, 20 (1996) ("The committee believes that restitution must be considered a part of the criminal sentence, and that justice cannot be considered served until full restitution is made.")).

as an object to the conspiracy, *with all of you agreeing as to the particular crime which the conspirators agreed to commit*." *See* Trial Tr., Vol. 9, at 119:4-8 (emphasis added). On August 23, 2021, the jury convicted the Perfectus Defendants on Count One, but the general verdict did not specify which of the four objects of the conspiracy supported the conviction. (ECF 276.)

Of the four objects charged in Count One, the Perfectus Defendants were only two of them can serve as "underlying objects" upon which any potential restitution could be based under the MVRA—wire fraud (Counts Two through Ten) and passing false papers through a customshouse (Counts Eleven through Seventeen). Therefore, the Court should look only to those two objects when determining whether restitution under the MVRA is proper. In doing so, the Court must resolve the issue of whether the object of a conspiracy to commit wire fraud or the object of a conspiracy to commit passing false papers through a customshouse fall within the statutory bounds of the MVRA. As discussed below, the conduct charged in Counts Eleven through Seventeen are not "offenses against property" under the MVRA. Accordingly, the Court is not authorized to order restitution for this object. Although the object of wire fraud may constitute an "offense against property," the government cannot otherwise satisfy its burden of proving the other MVRA requirements to make restitution proper. For these reasons, Probation cannot rely on Count One as the underlying offense of conviction to obtain restitution for all unpaid AD/CVD duties or to the 28 "institutional investors" identified by the government.

**B.**     **The MVRA Does Not Authorize Restitution for Passing False Papers Through a Customshouse in Violation of 18 U.S.C. § 545**

The Perfectus Defendants object to Probation's recommendation that they pay restitution in the amount of $1,836,244,745.03 to the CBP to satisfy the unpaid AD/CVD duties on the aluminum pallets the Perfectus Defendants imported

between January 3, 2011, through June 16, 2014. (PSR, ¶¶ 55.)  As a matter of law, the CBP is not entitled to any restitution for the unpaid AD/CVD duties under the MVRA. First, the Perfectus Defendants' Section 545 convictions are not offenses against any property interest held by the CBP. Second, Probation's restitution recommendation improperly extends beyond the transactions charged in Counts Eleven through Seventeen.

> 1.    The CBP Does Not Have a Property Interest in the Unpaid AD/CVD Duties

The MVRA is triggered only by "crimes of violence, crimes against property, and crimes related to tampering with consumer products."  *United States v. Nelson*, 454 Fed. Appx. 574, 576 (9th Cir. 2011) (citing 18 U.S.C. § 3663A(c)(1)). Without citing any authority, Probation asserts that "the provisions of the [MVRA] apply" to the Perfectus Defendants' convictions. (PSR, ¶¶ 53.)  To the extent Probation asserts that a conviction under 18 U.S.C. § 545 constitutes an "offense against property" as defined in the MVRA, Probation is incorrect as a matter of law. By the same token, the CBP is not a victim within the meaning of the MVRA.

While the MVRA does not define "offense against property," the Ninth Circuit has held that "against property" means "infringing on a victim's property interest" in the specific property lost by a victim. *Luis*, 765 F.3d at 1065; *see also Robers v. United States*, 572 U.S. 639, 640–41 (2014) (holding restitution under the MVRA is limited to "only to the specific property lost by a victim"). Courts, interpreting the statutory text, do not look to the elements of the offense to evaluate whether an offense against property occurred. *United States v. Razzouk*, 984 F.3d 181, 186–88 (2d Cir. 2020), *cert. denied*, 142 S. Ct. 223, 211 L. Ed. 2d 97 (2021); *see also United States v. Collins*, 854 F.3d 1324, 1334–35 (11th Cir. 2017). Rather, courts are to examine the facts of the crime of which the defendant is convicted. *See Razzouk*, 984 F.3d at 187-188; *see also Collins*, 854 F.3d at 1334-35. In

making that determination, "criminal conduct does not necessarily qualify as an 'offense against property' solely because it results in property damage or because someone suffers a loss at some point during its execution." *Collins*, 854 F.3d at 1331–32.

Following this authority, any assertion that the Perfectus Defendants' convictions under 18 U.S.C. § 545 constitute an "offense against property" under the MVRA fails because CBP does not have a "property right" in the claimed AD/CVD duties. First, the Department of Commerce's decision to impose an import barrier—AD/CVD duties—does not create a property right protected under the MVRA. The Supreme Court's decisions in *Cleveland v. United States*, 531 U.S. 12 (2000) and *Kelly v. United States*, 140 S. Ct. 1565, 1573 (2020) are instructive here. In *Cleveland*, the Supreme Court made clear that regulatory interests, such as the rights to allocation, exclusion, and control, do not constitute "property" as required under federal statutes because the ability to issue licenses do not constitute "property in the hands of the victim." *Cleveland*, 531 U.S. at 15, 20-22. "Even when tied to an expected stream of revenue, the State's right of control does not create a property interest any more than a law licensing liquor sales in a State that levies a sales tax on liquor. Such regulations are paradigmatic exercises of the States' traditional police powers." *Id.* at 23.

Relying heavily on *Cleveland*, the Supreme Court in *Kelly* held that the right to control access to the bridge was simply a regulatory choice and thus not "property" within the meaning of the property fraud statutes." *Kelly*, 140 S. Ct. at 1573. The Court, recognizing that the defendants' conduct deprived the Port Authority of full control over the toll plaza's use, and used the time and labor of employees paid by the Port Authority, nonetheless concluded that defendants did not obtain "the Port Authority's money or property[.]" *Id.* at 1573-74. In other words, while the scheme had as a completely foreseeable byproduct the use of

PERFECTUS DEFENDANTS' SENTENCING MEMORANDUM; OBJECTIONS TO PRESENTENCE REPORT; AND SENTENCING SUMMARY CHART

employees' valuable time and labor in implementing relocation of the lanes, the "object" of the defendants' scheme was "never to get the employees' labor," but rather to "impede access from Fort Lee to the George Washington Bridge." *Id.*

Here, the Perfectus Defendants were convicted of customs fraud by failing to pay AD/CVD on aluminum imported into the United States. This conduct, however, did not impact a property right as, under *Cleveland* and *Kelly*, the right to impose AD/CVD duties on aluminum extrusions imported from the People's Republic of China is purely regulatory. Indeed, the Indictment alleges that AD/CVD duties are imposed "to ensure fair competition between United States companies and foreign industry, and to counter international price discrimination that caused injury to United States domestic injuries." (Indictment, ¶ 26.)  In this regard, the AD/CVD duties here are like the video poker licenses in *Cleveland* because the duties implicate the DOC and USITC's rights to allocation, exclusion, and control of imported goods into the United States.

Probation's position that an offense under 18 U.S.C. § 545 constitutes an "offense against property" under the MVRA is thus undermined by the underlying purpose for which AD/CVD duties are imposed. Antidumping and countervailing duties are intended to offset the value of dumping and/or subsidization, thereby leveling the playing field for domestic industries injured by such unfairly traded imports. ***Here, for purposes of sentencing, Probation adopts the government's position that Perfectus "never sold a single CZW pallet" in the U.S.*** (PSR, ¶ 48.) Probation, therefore, concedes that there is no evidence of harm to the U.S. domestic aluminum industry or any other victim as a result of these importations.

In addition, restitution for the claimed duties cannot be ordered as a matter of law. When liquidation of the imported items became final, Customs relinquished any claim for the unpaid AD/CVD duties. Liquidation is the process for determining and assessing the amount of duties owed on imports. *See* 19 U.S.C. §

1500. Once liquidation occurs, it permanently deprives a party of the opportunity to contest the duties applied and renders cause of action to do so moot. *SKF USA Inc. v. United States*, 28 C.I.T. 170, 173 (2004) (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809-10 (Fed. Cir. 1983)).

Here, the Court of International Trade ("CIT") has already ruled on this very issue, finding that it could "provide no further relief" for CBP to recover any additional AD/CV duties on these same aluminum pallets imported between 2011 and 2014 at issue in this case because those entries had been conclusively liquidated. *See Perfectus Aluminum, Inc. v. United States*, 391 F. Supp. 3d 1341, 1357–58 (Ct. Int'l Trade 2019), *aff'd*, 836 Fed. Appx. 883 (Fed. Cir. 2020); *see also* 19 U.S.C. § 1514(a) (providing that liquidation "determinations of the Customs Service are final and conclusive upon all persons (including the United States and any officer thereof)").

Moreover, pursuant to 19 U.S.C. § 1501, the CIT ruled that CBP was "time-barred … from reliquidating [the] entries to include the assessment of antidumping and countervailing duties" because it did not reliquidate any of the entries within the statutorily mandated time period. *Perfectus*, 391 F. Supp. 3d at 1358, n.18. Importantly, the government ***did not dispute*** that the liquidations of the aluminum pallets imported between 2011 and 2014 were final and could not be reassessed under the applicable customs laws in effect at the time of importation. *Id*. at 1357 ("The parties do not dispute that these liquidations are final."). Even more, the government —despite the fact that its criminal investigation in this case was pending at the time of the CIT's decision and even though the Indictment was returned while the CIT's decision was on appeal before the Federal Circuit—never disputed that liquidation was final. By failing to raise this issue with the Federal Circuit, the government thereby agreed with the CIT on this issue and the CIT's decision became final. As a result, the CBP forever lost any property right it had or

PERFECTUS DEFENDANTS' SENTENCING MEMORANDUM; OBJECTIONS TO PRESENTENCE REPORT; AND SENTENCING SUMMARY CHART

could have argued that it possibly had in AD/CV duties related to the pallets imported between 2011 and 2014. [2]

As a matter of law, because the government has conceded and accepted a final judgment that it is not entitled to recover, and thereby has no property interest in, any AD/CVD duties for the pallets imported between 2011 and 2014, it is now barred by the doctrine of judicial estoppel from asserting a "clearly inconsistent" position at sentencing that the CBP is entitled to recover the AD/CVD duties. *See United States v. Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1149 (9th Cir. 2011) (refusing to "overlook what the government … wishes it had not stated" and concluding that judicial estoppel barred the government from arguing a clearly inconsistent position that directly contradicted its original position); *see also Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021) ("If people 'must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.'").

2.    Probation Overstates Any Loss to the CBP

Even if the AD/CVD duties could be a basis for restitution (which they are not as a matter of law), Probation overstates the amount of restitution by attempting to recover all of the unpaid AD/CVD duties. The MVRA limits restitution for the convictions on Counts Eleven through Seventeen to the specific

---

[2] Consistent with the government's concession that liquidation for the entries of the aluminum pallets was final, the Department of Commerce recently enacted new regulations—which do not apply here—to provide CBP with a procedural mechanism for recovering such AD/CV duties. *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 FR 52300-01 (Sept. 20, 2021). The adoption of these new regulations further demonstrates that CBP, during the relevant time period, had no right to retroactively collect the additional AD/CV duties it maintains were evaded as a result of violations of 18 U.S.C. § 545.

conduct that is the basis of these convictions. *See United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 927 (9th Cir. 2001).

The basis for the convictions of Counts Eleven through Seventeen is that the Perfectus Defendants passed a false CBP Form 7501 on each of the seven entries listed in the Indictment. (Indictment at ¶¶ 39-40.)  As reflected in the chart below, the AD/CVD duties owed for these seven entries equal $38,742,686.10.

| Count | Date | Entry Number | Total AD/CV Value |
|-------|------|--------------|-------------------|
| Count Eleven | 5/19/14 | W3303379083 | $8,593,334.82 |
| Count Twelve | 5/22/14 | W3303379737 | $2,412,164.16 |
| Count Thirteen | 5/23/14 | HR702108724 | $6,331,930.92 |
| Count Fourteen | 5/28/14 | HR702108708 | $418,436.64 |
| Count Fifteen | 5/30/14 | W3303381550 | $6,331,930.92 |
| Count Sixteen | 6/6/14 | HR702109383 | $8,624,478.24 |
| Count Seventeen | 6/27/14 | W3303385676 | $6,030,410.40 |
|  |  |  | **TOTAL:** $38,742,686.10 |

Accordingly, to the extent that a restitution award can be based on unpaid AD/CVD duties, for Counts Eleven through Seventeen, Probation overstates the amount of potential restitution by $1,797,502,058.93. For the reasons discussed above, Probation's recommendation of $1,836,224,745.03 in restitution to the CBP must be rejected.

### C.   The Convictions in Counts Two through Ten of Wire Fraud Do Not Support Probation's Recommended Restitution Award

The Perfectus Defendants object to Probation's recommendation that the Perfectus Defendants pay restitution in the collective amount of $124,270,000 to a list of purported "institutional investors."  Probation's recommendation on this

1  issue suffers from three fatal flaws. First, the 28 "institutional investors" identified

2  by the government were not, at any time, beneficial owners of the common stock

3  in CZW traded on the Main Board of the Stock Exchange of Hong Kong Limited

4  ("SEHK").[3]  (PSR, ¶¶ 54, 56.) and, therefore by definition, could not have suffered

5  a loss. Second, Probation has not presented evidence sufficient to demonstrate that

6  the Perfectus Defendants caused *any* investors in CZW to suffer a loss. Third,

7  Probation's loss calculations are factually and mathematically untenable. For these

8  reasons, the Court should decline to order any restitution award based on the wire

9  fraud convictions—Counts Two through Ten – or on any other grounds.

10      1.   The 28 Institutional Investors Are Not "Victims" Under the
       MVRA

11         The 28 institutional investors identified by Probation do not qualify as

12  "victims" under the MVRA. Having no property interests themselves in the CZW

13  stock, they, by definition, could not have suffered any property loss. Moreover,

14  they cannot be used as proxies for unnamed and unidentified victims. "The MVRA

15  is clear that restitution can only be imposed to the extent that the victims of a crime

16  are actually identified, 18 U.S.C. § 3663A(c)(1)(B). Identification of victims is a

17  statutory prerequisite to the application of the MVRA." *United States v. Catoggio*,

18  326 F.3d 323, 328 (2d Cir. 2003). Here, Probation erroneously asserts that these

19  entities were shareholders who suffered losses because of a drop in the price of

20  shares held by them. This is simply not true. The investment advisers and

21

22

23  ───────────────

   [3] In essence, the wire fraud counts allege securities fraud. A valid securities fraud

24  claim consists of six elements: "(1) a material misrepresentation or omission; (2)
   made with scienter; (3) in connection with the purchase or sale of a security; (4)

25  reliance on the misrepresentation or omission; (5) economic loss; and (6) loss
   causation." *In re Bofl Holding, Inc. Securities Litigation*, 977 F.3d 781, 787 (9th

26  Cir. 2020) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267

27  (2014)).

28

investment funds identified by Probation had no ownership interest in even a single share of CZW stock. As such, they did not gain when the stock price rose or lose when stock price dropped. The owners of the stocks were their clients (here, perhaps hundreds or even thousands of unidentified, unnamed entities) whom they advised on their investments in equities.

More specifically, each of the 28 institutional investors is either a United States or foreign "Exchange Traded Fund" ("ETF")—a diverse collection of securities that are bought and sold on stock exchanges the same way as individual stocks. CZW was included in select ETFs as a means for investors in those ETFs to own shares linked to the Chinese economy and/or worldwide firms engaged in basic manufacturing. The 28 institutional investors simply oversee the management and marketing of ETFs. These management and advisory funds are not exposed to the risks of changes in the stock prices of the individual companies that comprise the ETF. These advisory and management firms effectively act like commissioned sales and management representatives.[4]  And they are distinct from their clients, commonly referred to as Authorized Participants, who purchase and hold the shares of the individual stocks that comprise ETFs.[5]  In short, none of the firms identified by the Probation have been shown to have suffered any losses as a result of the actions of the Perfectus Defendants, CZW or any other Defendant. Therefore, they do not qualify as "victims" under the MVRA.

---

[4] Https://us.dimensional.com/etfs. Dimensional Fund Advisors LP is identified as the fund having incurred the largest shareholder loss. Like the other firms identified as "Victims," Dimensional Fund Advisors LP does not purchase, assemble and hold share of the stocks that comprise the fund.

[5] Https://www.sifma.org/wp-content/uploads/2018/09/SIFMA-Insights-US-ETF-Primer.pdf. The diagram on pg. 27 illustrates the distinction between Primary Market entities exposed to share price risk and the Secondary Market ETF sellers like the advisory and management firms who are not exposed to the types of price changes alleged here to have injured CZW shareholders.

For these same reasons, such institutional investors could not be plaintiffs in and obtain recoveries in securities cases, only the actual shareholders can do so. *See e.g., U.S. v. Ferguson*, 584 F.Supp.2d 447, 458 (D. Conn. 2008) (finding that "[w]hile [an expert's] event study identified 154 institutional holders of LPT-damaged shares, in order to award restitution, this court would have to identify the individuals who had an interest in those institutional holdings"). Here, because Probation has failed to actually identify any specific shareholders who suffered any losses, it has failed to adequately meet the threshold requirement of identifying a victim for the purposes of ordering restitution under the MVRA.

## 2. There is Insufficient Evidence that the Perfectus Defendants Caused a Loss

Even if there were identified victims—which there are not—there is no reliable evidence of a quantifiable loss. Citing to an unidentified government expert, Probation contends that the scheme to defraud investors in CZW resulted in losses of $289,000,000, 43% (or $124,270,000) of which was attributable to shares owned by Liu. (PSR, ¶ 54.) Probation indicates that this measure of losses is based on the one-day drop in CZW market capitalization resulting from release of the Dupré Report issued by a short seller in July 2015.[6] Put simply, this measure of shareholder restitution proposed by Probation is wholly unreliable and therefore unusable.

The methodology purportedly relied on by Probation as the measure of shareholder restitution is defined in economic terms as a "corrective disclosure."

---

[6] Defendants understand Probation's loss calculation for the purported wire fraud "victims" to be based on the change in the difference in the closing price of CZW's stock on the day the Dupré Report was released—$0.32 USD per share—and the price on August 13, 2015—$0.28 USD per share—the date CZW's stock resumed trading. The $0.04 USD per share difference was multiplied by the number of shares outstanding to arrive at the claimed loss.

PERFECTUS DEFENDANTS' SENTENCING MEMORANDUM; OBJECTIONS TO PRESENTENCE REPORT; AND SENTENCING SUMMARY CHART

A "corrective disclosure" occurs where the company at issue publicly informs shareholders that information previously released by the company was false. Here, however, rather than offering any "corrective disclosure" issued by CZW, Probation relies on the disclosures made in the Dupré Report. (PSR, ¶ 54.)  The Dupré Report was authored and released by a then-anonymous short seller who expressly admitted to having a financial interest in the potential decline in CZW's stock price. The Dupré Report also included disclaimers from the short seller that it "makes no representation, express or implied, as to the accuracy, timeliness or completeness of any such information or with regard to the results to be obtained from its use."

In no uncertain terms, the Ninth Circuit held that blogs posts "authored by anonymous short-sellers who had a financial incentive to convince others to sell" and that "included disclaimers from the authors stating that they made 'no representation as to the accuracy or completeness of the information set forth in this article' could not plausibly constitute corrective disclosures." *Bofl,* 977 F.3d at 797. In light of this clear guidance from the Ninth Circuit, the Dupré Report is not a valid "corrective disclosure" for purposes of calculating restitution under the MVRA.

Instead, this Court should view the law governing securities fraud claims as instructive when determining whether there is reliable evidence of whether the Perfectus Defendants' conduct caused any CZW investors to suffer a loss. In a securities fraud action under federal securities laws, a plaintiff must plead and prove transaction causation and loss causation—analogs for the concepts of but for cause and proximate cause, respectively.[7] *See Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1118 (9th Cir. 2013);

---

[7] "The concept of proximate causation is applicable in both criminal and tort law, and the analysis is parallel in many instances." *Paroline,* 572 U.S. at 444.

PERFECTUS DEFENDANTS' SENTENCING MEMORANDUM; OBJECTIONS TO PRESENTENCE REPORT; AND SENTENCING SUMMARY CHART

*see also Bofl,* 977 F.3d at 789 ("a plaintiff in a securities fraud suit must plead and ultimately prove that the defendant's wrongful conduct caused the plaintiff's injury."). "[T]o prove transaction causation, the plaintiff must show that, but for the fraud, the plaintiff would not have engaged in the transaction at issue . . .." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005). "[T]o satisfy the loss causation requirement, the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor causing a decline in the security's price." *Nuveen*, 730 F.3d at 1120.

A plaintiff has only suffered economic loss, if, "after purchasing her shares and before selling, the following occurred: (1) the truth became known, and (2) the revelation caused the fraud-induced inflation in the stock's price to be reduced or eliminated." *Bofl*, 977 F.3d at 789. In such a scenario, the plaintiff "is no longer able to recoup in the marketplace the inflationary component of the price she originally paid." *Id*. Here, the cited evidence does not support a finding that the any shareholders suffered a loss or that any such losses were caused by the Perfectus Defendants' conduct.

Applying well-settled law on causation in the securities fraud context, it is clear that Probation fails to identify any reliable evidence to prove either but for causation or proximate cause for the purported aggregated loss. Moreover, such proof in the aggregate would be insufficient for restitution purposes. Proof of loss, if any, would require information related to the thousands of actual shareholders and the possibly thousands of individual transactions made by those shareholders at a myriad of points in time, before assessing whether any one or more of the actual shareholders were affected by the events at issue in this case. Probation has not completed this type of assessment with respect to any actual shareholder.

***First***, Probation has not identified any misrepresentations made by the Perfectus Defendants and relied on by actual investors in CZW. Even as to the

misrepresentations charged in the Indictment, there is no evidence that any actual investors were misled by such statements, or that any investors purchased CZW's shares because of such misrepresentations. *See United States v. Stratos*, 2017 WL 272213, at *12 (E.D. Cal. Jan. 20, 2017) (refusing to provide restitution to JP Morgan Chase where no evidence existed to establish that that JP Morgan Chase was misled by defendant's fraud); *United States v. Ward*, 2013 WL 57855, at *5 (N.D. Cal. Jan. 3, 2013) (finding the government did not meet its burden to show that the loses to investors resulted from defendant' criminal conduct where the government did not point to any evidence of specific misrepresentations made by defendants to these victims which caused them to make the investment).

***Second***, Probation has not cited to any evidence that any actual investors suffered a loss, or that any purported loss to an investor was caused by the Perfectus Defendants' conduct. On the first point, Probation merely refers to the government's assertion that "CZW and its investors lost approximately $289,000,000" when trading resumed after the Dupré Report was issued. (PSR, ¶ 54.)  As explained above, however, a decline in market value alone is insufficient to establish loss. *See Bofl*, 977 F.3d at 790 (citing *Dura*, 544 U.S. at 343); *see also Ward*, 2013 WL 57855, at *4 ("losses attributable to a decline in investment value as a result of market forces are not properly included in [a] restitution order.").

For these reasons, this Court should decline to order restitution relating to any investments in CZW.

3.     <u>Probation's Mathematical Calculation of the Restitution Is Significantly and Irreparably Flawed</u>

Even if this Court were to conclude that restitution relating to investments in CZW to the listed entities is warranted (which it is clearly not as a matter of law), it should not accept the monetary amounts suggested by Probation. There is a substantial discrepancy between the losses Probation contends were incurred by

each of the institutional investors and the basis for the government's expert's underlying calculation. As inferred from Probation's description of its estimate, any loss is measured by the change in CZW's share price multiplied by the number of shares managed by each fund at the time of the loss. Since CZW was listed on the SEHK, shares were priced and traded in Hong Kong dollars. As such, share price changes would necessarily have to be converted to USD. The one-day price change relied on by Probation, as properly converted, amounts to $0.04 USD per share.[8]

Utilizing the three largest funds identified by Probation—Dimensional Fund Advisors LP, The Vanguard Group Inc., and Norges Bank Investment Management—to illustrate the discrepancies in Probation's restitution calculation, it is readily apparent that Probation's calculations are irreparably flawed and make no mathematical sense.

In August 2015, Dimensional owned 48.2 million shares; Vanguard owned 39.5 million shares; and Norges owned 20 million shares. Based on the $0.04 USD per share decline, losses in US dollars would amount to: (i) $1.93 million for Dimensional; (ii) $1.58 million for Vanguard; and (iii) $800,000 for Norges. By comparison, Probation claims that Dimensional's loss equals $43.3 million, Vanguard's loss equals $35.2 million, and Norges' loss equals $17.6 million. In the aggregate, this amounts to an accounting discrepancy and overestimate by Probation in the amount of approximately $93.4 million.

The discrepancy noted above can be shown from reports of the funds themselves. ETFs periodically report the values of their holdings of the individual stocks that comprise the fund. For example, in 2014, Norges indicated that the year-end value of its holdings in CZW amounted to $8.72 million USD. In 2015,

---

[8] The government's expert agreed that share price change associated with release of the Dupré Report amounted to a decline of $0.04 USD per share.

Norges indicated that its CZW holdings had increased to $11.7 million USD. Yet, Probation presents in its report that Norges, for example, suffered a supposedly one-day loss of $17,582,107.18 USD, which is ***twice the entire value*** of Norge's 2014 holdings and 50% greater than the entire value of its 2015 holdings. Of course, this is a completely nonsensical mathematical result.

Accordingly, even if the 28 institutional investors were "victims" under the MVRA—which they are not—Probation's calculation of restitution is fraught with error, factually and mathematically impossible and entirely unreliable. Therefore, the requested award of restitution in the recommended amount of $124,270,000 at sentencing must be denied.

## III.   <u>ADDITIONAL OBJECTIONS TO THE PSRS</u>[9]

The Perfectus Defendants object to PSRs ¶¶ 66 through 75 to the extent they misstate the pertinent facts relevant to each Perfectus Defendant. In addition, the Perfectus Defendants object to the following portions of the PSRs:

• **<u>PSRs ¶ 27</u>**: The Perfectus Defendants object to PSRs ¶ 27 on the grounds that it includes factual errors and request that the Court strike it from the PSRs.

• **<u>PSRs ¶ 29 and 33</u>**: The Perfectus Defendants object to PSRs ¶ 29 and 33 on the grounds that these paragraphs include factual errors and request that the Court strike them from the PSRs.

---

[9] Probation submitted two separate, but virtually identical, reports, one for Perfectus Aluminum Inc.("PAI") and another for Perfectus Aluminum Acquisitions, LLC ("PAI"). In some instances, the numbering of the paragraphs of the reports for identical statements are the same, in others the numbering is different. For ease of making objections, where the numbering is the same the Paragraphs will be identified as "PSRs;" in stances where they are different, the paragraphs will be identified as "PSR PAI" and "PSR PAA".

PERFECTUS DEFENDANTS' SENTENCING MEMORANDUM; OBJECTIONS TO PRESENTENCE REPORT; AND SENTENCING SUMMARY CHART

- **PSRs ¶ 41**: The Perfectus Defendants object to PSRs ¶ 41 on the grounds that it misrepresents the definition of "finished merchandise" as written in the 2011 AD/CVD Orders. It was through subsequent scope rulings that the DOC explained that "finished merchandise" means "products that were fully and permanently assembled and completed at the time of entry."

- **PSRs ¶ 44, 45, 46 and 47**: The Perfectus Defendants object to each of these paragraphs on the grounds that they include factual errors and request that the Court strike them from the PSRs.

- **PSRs, Footnote 2**: The Perfectus Defendants object to Footnote 2 of the PSRs on the grounds that it includes factual errors and request that the Court strike it from the PSRs.

- **PSRs, Footnote 3**: The Perfectus Defendants object to Footnote 3 of the PSRs on the grounds that it includes factual errors and request that the Court strike it from the PSRs.

- **PSRs ¶ 48. 49, 50, 51, 52, 54, 55, and 56.**: The Perfectus Defendants object to each of these paragraphs on the grounds that they include factual errors and request that the Court strike them from the PSRs.

- **PSRs ¶ 66**: The Perfectus Defendants respectfully object to PSRs ¶ 66 on the grounds that the interviewing Probation Officers seem to have a misunderstanding and/or are inadvertently mischaracterizing the statements made by defense counsel Robert Ruyak during the December 29, 2021, presentence interview. The subsequent paragraphs in the PSRs (i.e., PSRs ¶¶ 67-105) do not specify the information that the Probation Officers maintain counsel Robert Ruyak provided. Moreover, counsel Robert Ruyak did not concede any factual disputes or admit to anything on behalf of the Perfectus Defendants.

- **PSR PAI ¶ 109 PAI and PSR PAA 110**: The Perfectus Defendants object to these paragraphs on the grounds that they include factual errors and request that the Court strike them from the PSRs.

- **PSR PAI ¶ 110 PAI and PSR PAA 111**: The Perfectus Defendants object to these paragraphs the grounds that it includes factual errors and request that the Court strike them from the PSRs.

- **PSR PAI ¶ 111PAI and PSR PAA 112** The Perfectus Defendants object to these paragraphs on the grounds that it includes factual errors and request that the Court strike them from the PSRs.

## IV.   CONCLUSION

For the foregoing reasons, the Court should decline to order restitution in this matter. If, however, the Court is inclined to order that restitution be paid as a condition of probation, the Perfectus Defendants respectfully request that an evidentiary hearing be held to determine the total amount of restitution owed, the apportionment of the restitution obligation among the defendants, and the appropriate payment schedule for each defendant.

Dated February 28, 2022

By: _____

Robert F. Ruyak
RUYAKCHERIAN LLP
Attorneys for Defendants
PERFECTUS ALUMINIUM INC.,
Aka "PERFECTUS ALUMINUM, INC."
and
PERFECTUS ALUMINUM
ACQUISITIONS LLC